IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DIANE MARIE FARDEN,

    Plaintiff,

    vs.                                                                                                           2:15-cv-00726-LF

NANCY A. BERRYHILL,[1]
Acting Commissioner of the
Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Diane Marie Farden's Motion to Reverse or Remand Administrative Agency Decision, filed May 16, 2016, and fully briefed on August 28, 2016. Docs. 23, 26, 27. The parties have consented to my entering a final judgment in this case. Docs. 12, 29, 30. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") failed to apply the correct legal standards when assessing Ms. Farden's credibility. I therefore GRANT Ms. Farden's motion and remand this case to the Commissioner for proceedings consistent with this opinion.

### I.    Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Nancy A. Berryhill, the new Acting Commissioner of Social Security, is automatically substituted for her predecessor, Acting Commissioner Carolyn W. Colvin, as the defendant in this suit. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, as it is in this case.

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

2

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Ms. Farden was born on July 21, 1978. AR[4] 32, 223. She has a seventh grade education and a history of working as a baby sitter, adult caregiver, cashier, waitress, and as the owner of a landscape business. AR 32, 241, 261, 880, 902–03. At the time of the hearing before ALJ Hertzig (the ALJ whose decision is at issue in this case), Ms. Farden was married and living with her husband and youngest daughter in Clovis, New Mexico. AR 879–80.

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Documents 20-1 through 20-64 comprise the sealed administrative record ("AR"). When citing to the record, the Court cites to the AR's internal pagination rather than the CM/ECF document number and page.

Ms. Farden initially applied for Supplemental Security Income benefits on March 17, 2008, alleging disability since March 13, 2007.  AR 223–29.  Ms. Farden alleged she was disabled due to arthritis in her spine, headaches, depression, insomnia, bulging discs in her back, pain in both her legs, shooting pain from the bottom of her spine to the top of her head, degenerative disc disease, and a ventral hernia.  AR 240.

At the time of her March 2008 application, Ms. Farden lived in Dallas, Texas.  AR 224.  While her application was pending, Ms. Farden moved to Clovis, New Mexico, and from Clovis, she moved to California.  AR 77–79.  In June of 2014, Ms. Farden moved back to Clovis, New Mexico.  AR 1174.

Ms. Farden's March 2008 application for benefits was denied initially and upon reconsideration, and Ms. Farden requested a hearing before an ALJ.  AR 98–99, 109–11.  On February 17, 2010, ALJ Lowell Fortune conducted a hearing, but because he did not have all of the relevant medical evidence, he continued the hearing.  AR 53–88.  ALJ Fortune held a supplemental hearing on June 4, 2010.  AR 29–52.  ALJ Fortune issued his unfavorable decision on July 21, 2010.  AR 9–28.  The Appeals Council denied Ms. Farden's request for review, and on March 29, 2012, Ms. Farden appealed the Commissioner's decision to the United States District Court for the Central District of California.  AR 1007–11, 1013–15.  The district court in California reversed and remanded the Commissioner's decision for further proceedings on March 25, 2013.  AR 1020–43.

While ALJ Fortune's decision was under review in California, Ms. Farden filed a second application for supplemental security income on October 7, 2011, continuing to allege disability as of March 13, 2007.  AR 921.  Her second application was denied initially and upon reconsideration, and ALJ Jennifer Simmons held a hearing on May 21, 2012.  *Id.*  ALJ Simmons

4

issued an unfavorable decision on July 17, 2012. AR 918–932, 1081–92. The Appeals Council consolidated Ms. Farden's appeal of ALJ Simmons' decision with ALJ Fortune's remanded decision and issued an order remanding the consolidated case to an administrative law judge. AR 913–17, 1048–52.

ALJ Michael Hertzig held a hearing on March 20, 2015. AR 872–912. ALJ Hertzig issued his unfavorable decision on May 15, 2015. AR 833–69. ALJ Hertzig's decision is the one at issue in this appeal. *See* Doc. 2. At step one, ALJ Hertzig found that Ms. Farden had not engaged in substantial, gainful activity since her alleged onset date of March 17, 2008. AR 839. Because Ms. Farden had not engaged in substantial gainful activity for at least 12 months, ALJ Hertzig proceeded to step two. At step two, ALJ Hertzig found that Ms. Farden suffered from the severe impairments of "morbid obesity, lumbar spine arthritis, and mixed connective tissue disease."[5] *Id*. ALJ Hertzig found that Ms. Farden had several nonsevere impairments: knee pain, restless leg syndrome, Sjögren's syndrome, systemic lupus erythematosus, rheumatoid arthritis, chronic obstructive pulmonary disease, hiatal hernia, gastric reflux, depression, anxiety, pelvic pain, hypothyroid disease, hiatal hernia, gastroesophageal reflux disease, diverticulosis, and chronic obstructive pulmonary disease and/or asthma. AR 840–50. At step three, ALJ Hertzig found that none of Ms. Farden's impairments—alone or in combination—met or medically equaled a Listing. AR 850–52.

---

[5] Notably, unlike the previous two ALJ's, ALJ Hertzig did not find that Ms. Farden's depressive disorder was a severe impairment. *Compare* AR 839 *with* AR 14 (ALJ Fortune found depressive disorder was a severe impairment) and AR 923 (ALJ Simmons found depressive disorder was a severe impairment). ALJ Hertzig is, however, not bound by a prior ALJ's ruling. *See Miller v. Barnhart*, 175 F. App'x 952, 955 (10th Cir. 2006) (unpublished).

Because none of the impairments met a Listing, ALJ Hertzig moved to step four. At step four, ALJ Hertzig found that:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except can stand 30 minutes at one time, and then must alternate position in place for a few minutes; can sit 60 minutes at one time, and then can change position for a few minutes in place; never climbing ladders, ropes, or scaffolds; occasional climbing ramps and stairs; occasional balancing, stooping, kneeling, crouching, or crawling; avoid all exposure to unprotected heights; can frequently be exposed to temperature extremes; can occasionally be exposed to vibration and uneven surfaces.

AR 852. ALJ Hertzig determined that Ms. Farden was capable of performing her past relevant work as an accounts receivable/payable clerk and payroll clerk and, therefore, was not disabled. AR 861–62.[6]

Ms. Farden requested—and the Appeals Council granted—an extension of time for filing exceptions to ALJ Hertzig's decision until August 13, 2015. AR 827-28, 832. Ms. Farden did not file exceptions, and the Appeals Council did not review the decision on its own, making ALJ Hertzig's decision the final decision of the Commissioner and prompting this appeal. Doc. 2 at 1. Ms. Farden timely appealed the case to this Court on August 18, 2015. Doc. 2.

---

[6] Both Ms. Farden and the Commissioner argue that ALJ Hertzig alternatively found that Ms. Farden was capable of performing other jobs in the national economy. Doc. 23 at 6; Doc. 26 at 11. It is unclear, however, whether ALJ Hertzig intended to rely on the vocational expert's ("VE") testimony to make an alternate finding. At step five, it is the Commissioner's burden to establish that the claimant can perform work that exists in significant numbers in the national economy. *See Dikeman v. Halter*, 245 F.3d 1182, 1183 (10th Cir. 2001).

In his decision, ALJ Hertzig notes that the VE identified other jobs that Ms. Farden could perform, but he does not mention the number of jobs that exist in the national economy and does not find that the number is significant. AR 862. ALJ Hertzig's acknowledgment of the VE's testimony about other jobs does not constitute a sufficient alternative finding. I will not assume that just because the VE provided a number for the jobs in her testimony that ALJ Hertzig adopted that testimony as a finding at step five. Regardless, ALJ Hertzig's finding at step five is not crucial to the disposition of this case.

**IV. Ms. Farden's Claims**

Ms. Farden raises six main arguments on appeal. She contends ALJ Hertzig erred in: (1) finding Ms. Farden's depressive disorder nonsevere at step two; (2) failing to follow the mandates of the U.S. District Court and the Appeals Council; (3) finding that Ms. Farden's impairments did not meet Listing 14.06; (4) finding that Ms. Farden could perform her past relevant work; (5) failing to accurately give his RFC to the vocational expert ("VE"); and (6) improperly relying on the VE's testimony that Ms. Farden was capable of performing other work.

Within Ms. Farden's first point of error, she makes three sub-arguments. First, Ms. Farden contends that ALJ Hertzig erred in finding her depressive disorder nonsevere by using vague and imprecise terms to describe her medical treatment. Doc. 23 at 12–13. Next, she criticizes ALJ Hertzig for failing to follow Social Security Ruling ("SSR") 96-7p.[7] *Id.* at 13–14. Finally, Ms. Farden complains that ALJ Hertzig exaggerated or misstated evidence in order to determine that her depressive disorder was nonsevere. *Id.* at 14–15. I find that while any error at step two was harmless, ALJ Hertzig failed to conduct a complete credibility analysis in accordance with SSR 96-7p at step four, requiring reversal. Because I remand based on ALJ Hertzig's failure to adequately analyze Ms. Farden's credibility, I do not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

---

[7] SSR 96-7p was superseded by SSR 16-3p on March 16, 2016. *See* SSR 16-3p, 2016 WL 1119029 (2016). The Court will apply SSR 96-7p in this case, however, because ALJ Hertzig's decision was made while SSR 96-7 was still in effect, and because both SSR 96-7p and SSR 16-3p require that an ALJ consider the reasons why a claimant may not seek treatment—including the inability to afford treatment—which is at issue in this case.

V. **Discussion**

A. **Step Two**

Ms. Farden first asks the Court to reverse the Commissioner's final decision because ALJ Hertzig failed to find at step two that her depressive disorder is a severe impairment. Doc. 23 at 12–15. At step two of the sequential evaluation process, the ALJ must determine whether any of a claimant's medically determinable impairments, or a combination thereof, is "severe." *See* 20 C.F.R. § 416.920(c). To be "medically determinable," an impairment

> must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.

20 C.F.R. § 416.908. To be "severe," an impairment must significantly limit a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).

Step two is designed to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability. *Bowen*, 482 U.S. at 156 (O'Connor, J. concurring). A claimant must make only a de minimis showing for his or her claim to advance beyond step two of the sequential evaluation process. *Langley*, 373 F.3d at 1123. To that end, a claimant is required to establish—and an ALJ is required to find—only one severe impairment. *See Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007) (rejecting the argument that the ALJ erred in failing to find an impairment severe at step two where the ALJ found other impairments were severe). "As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step." *Dray v. Astrue*, 353 F. App'x 147, 149 (10th Cir. 2009) (unpublished). Step two errors are harmless "so long as the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence." *Carpenter v. Astrue*, 537

8

F.3d 1264, 1266 (10th Cir. 2008). Harmless errors do not warrant remand. *Shineski v. Sanders*, 556 U.S. 396, 407–09 (2009).

ALJ Hertzig determined at step two that Ms. Farden's depressive disorder was medically determinable, but nonsevere. AR 848. He further found that Ms. Farden suffered the severe impairments of morbid obesity, lumbar spine arthritis, and mixed connective tissue disease. AR 839. ALJ Hertzig's determination that Ms. Farden's depressive disorder was not a severe impairment at step two is, therefore, harmless and does not require remand because he found at least one other impairment was severe and continued to the next steps in the sequential evaluation process.

ALJ Hertzig also conducted a proper evaluation in determining that Ms. Farden's depressive disorder was nonsevere. In determining the severity of a claimant's mental impairment at step two, the ALJ must consider the claimant's limitations in four broad functional areas: (1) activities of daily living, (2) social functioning, (3) concentration, persistence, and pace, and (4) episodes of decompensation ("the paragraph B factors"). *See Wells v. Colvin*, 727 F.3d 1061, 1068 (citing 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3)[8]). ALJ Hertzig thoroughly discussed each of the paragraph B factors in his opinion. AR 849–50. Accordingly, he did not commit reversible error at step two.

This is not to say, however, that the disability evaluation process ends at step two with regard to an impairment found to be nonsevere. An ALJ must consider the limiting effects of all of a claimant's impairments—including those that are not severe—in determining a claimant's RFC at step four. *Dray*, 353 F. App'x at 149 (citing 20 C.F.R. §§ 404.1545(e), 416.945(e); SSR 96-8p, 1996 WL 374184, at *5). "'[P]aragraph B' limitations are not an RFC assessment but are

---

[8] 20 C.F.R. §§ 404.1520a and 416.920a were revised on March 27, 2017, and no longer recite this particular language.

used to evaluate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." *Fulton v. Colvin*, 631 F. App'x 498, 505 (10th Cir. 2015) (unpublished). In her step two argument, Ms. Farden complains that ALJ Hertzig failed to follow SSR 96-7p. Doc. 23 at 13–14. Because ALJ Hertzig did not err at step two, Ms. Farden's argument is more appropriately an attack on ALJ Hertzig's credibility findings at step four, and the Court will evaluate it in that light.

### B. Step Four

"A conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ to simply disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Wells*, 727 F.3d at 1068–69. An ALJ's RFC assessment must consider both severe and nonsevere medically determinable impairments. *Id.*; 20 C.F.R. § 416.945(e). While the ALJ is not required to discuss every piece of evidence, an ALJ must discuss the uncontroverted evidence he or she chooses not to rely upon and any significantly probative evidence the ALJ decides to reject. *See Wall v. Astrue*, 561 F. 3d 1048, 1967 (10th Cir. 2009).

When evaluating a claimant's statement about his or her symptoms,[9] an ALJ must perform a two-step process. SSR 96-7p, 1996 WL 374186, at *2. First, the ALJ must consider whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *Id.*; *see also* 20 C.F.R. § 416.929(a). As noted above, ALJ Hertzig determined that Ms. Farden's depression was a medically determinable impairment. AR 848.

---

[9] "A symptom is an individual's own description of his or her physical or mental impairment(s)." SSR 96-7p, 1996 WL 374186, at *2.

Once the ALJ finds the existence of a medically determinable impairment, the ALJ must then evaluate the intensity and persistence of the symptoms to determine how the symptoms limit the claimant's capacity for work. SSR 96-7p, 1996 WL 374186, at *2. "For this purpose, whenever the individual's statement about the intensity, persistence, or functionally limiting effects of pain or other symptoms [is] not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.*

Generally, a long medical history of an individual's attempts to seek treatment for his or her alleged symptoms and following the recommended treatment lends support to an individual's allegations. SSR 96-7p, 1996 WL 374186, at *7.

> On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.

*Id*. Social Security Ruling 96-7p lists several examples that an individual may provide for failing to seek treatment,[10] including "[t]he individual may be unable to afford treatment and may not

---

[10] The examples include:

> * The individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms. The individual may be living with the symptoms, seeing a medical source only as needed for periodic evaluation and renewal of medications.
> * The individual's symptoms may not be severe enough to prompt the individual to seek ongoing medical attention or may be relieved with over-the-counter medications.
> * The individual may not take prescription medication because the side effects are less tolerable than the symptoms.
> * The individual may be unable to afford treatment and may not have access to free or low-cost medical services.
> * The individual may have been advised by a medical source that there is no further, effective treatment that can be prescribed and undertaken that would benefit the individual.

have access to free or low-cost medical services." SSR 96-7p, 1996 WL 374186, at *8.

Ms. Farden argues that while relying heavily on the fact that she did not seek treatment for depression, ALJ Hertzig failed to consider her explanation for not doing so. Doc. 23 at 13–14. In determining that her depressive disorder was nonsevere, ALJ Hertzig found that Ms. Farden's depressive disorder was nonsevere because she did not seek or receive "meaningful treatment" for the condition. *See* Doc. 23 at 13–14; AR 846 ("[Ms. Farden] never maintained meaningful mental health treatment or sought formal mental health evaluation . . . does not appear to have been evaluated by a mental health professional other than [] Dr. Gleaves . . . the claimant is not shown to have maintained any mental health treatment after the visits to Dr. Bulrice."); AR 847 ("no evidence of meaningful mental health treatment and failed to appear for a psychological consultative examination scheduled in August 2013 . . . but is clearly not shown in the record to have sustained any psychotropic medication or other meaningful mental health treatment . . . . During her return visit to Clovis in February 2015, the claimant did not mention depression."); AR 848 (Dr. Amusa "noted that the claimant mentioned anxiety and depression only intermittently."). In summarizing Ms. Farden's depressive disorder, ALJ Hertzig stated:

> Again, since the March 2007 alleged onset date, the claimant complained on a few occasions of marked to extreme depression or anxiety, yet remained relatively unremarkable on most mental status examinations. She is not shown to have maintained any meaningful psychotropic medications since 2007, never sought formal mental health evaluation, and failed [to attend] a scheduled psychological consultative examination in August 2013.

AR 848. Accordingly, ALJ Hertzig concluded that Ms. Farden's "medically determinable mental impairment of major depression, unspecified, considered singly and in combination, did

---

* Medical treatment may be contrary to the teaching and tenets of the individual's religion.

SSR 96-7p, 1996 WL 374186, at *8.

not cause more than minimal limitation in [Ms. Farden's] ability to perform basic mental work activities and was, therefore, not 'severe.'" *Id.*

Although he does not specifically say so, ALJ Hertzig necessarily concluded that Ms. Farden's explanation for failing to seek treatment was not credible. To rely on the claimant's failure to pursue treatment as support for a finding of noncredibility, the ALJ should consider four factors: "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir.1993). This analysis applies to cases in which the claimant fails to pursue medical treatment because he or she cannot afford it. *See id.* at 1489–90.

During the June 2010 hearing, Ms. Farden testified that she was supposed to be seeing a psychologist, but she did not have the financial means to obtain treatment. See AR 40–41. Ms. Farden noted that the cost of transportation on the bus made obtaining treatment impossible given her monthly income. AR 41. This evidence provides an alternative explanation—other than lack of functional impairment—for Ms. Farden's failure to obtain treatment. Despite this uncontroverted evidence, ALJ Hertzig did not consider the *Thompson* factors. Specifically, ALJ Hertzig failed to consider whether Ms. Farden's failure to seek treatment was justifiable based on her inability to afford care. ALJ Hertzig also did not consider the other factors, requiring remand.

## VI. Conclusion

The ALJ failed to apply the legal standards in SSR 96-7p when assessing Ms. Farden's credibility. He failed to take into account Ms. Farden's inability to pay for mental health services while at the same time relying on her lack of treatment for depression.

13

IT IS THEREFORE ORDERED that plaintiff Diane Marie Farden's Motion to Reverse or Remand Administrative Agency Decision (Doc. 23) is GRANTED. The decision of the Commissioner is REVERSED and REMANDED for further proceedings consistent with this opinion.

                                                                                      _____
Laura Fashing
United States Magistrate Judge
Presiding by Consent